IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MOHAMMED SHAHER HALHOULI,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF STATE; U.S. EMBASSY IN AMMAN, JORDAN; MARCO RUBIO, United States Secretary of State; and ROHIT NEPAL, Chargé d'Affaires at the U.S. Embassy in Amman, Jordan,<br><br>Defendants. | 8:25CV223<br><br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |

    This is one of numerous cases alleging unreasonable delays in the processing or determination of applications for immigrant visas. In this case, a United States citizen seeks "a writ of mandamus compelling Defendants to adjudicate a long-delayed spouse visa application." Filing 1 at 2 (first unnumbered paragraph). Plaintiff's central contention is that the Department of State (DOS) "has refused to issue a final decision on this case," after a consular interview, consular request for additional information, and more than a year's delay. Filing 1 at 4 (¶ 17). This case is now before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Filing 10. In support of their Motion, Defendants assert that a consular officer "refused" Plaintiff's spouse's visa application after her consular interview, so that "there is nothing ministerial [for the Court] to order." Filing 12 at 2. As explained below, Defendants' Motion to Dismiss is granted as to lack of subject-matter jurisdiction because Plaintiff's claims are moot, and this case is dismissed in its entirety.

1

## I. INTRODUCTION

### A. Background

The Court concludes that only a brief summary of the factual and procedural background is required to put the lawsuit and the Motion to Dismiss in context. Plaintiff Mohammed Shaher Halhouli is a United States citizen residing in Nebraska. Filing 1 at 1 (¶¶ 1–2). On November 18, 2019, Halhouli filed an I-130 visa petition on behalf of his spouse, Fatima Omar Abusamri, with the U.S. Citizenship and Immigration Services (USCIS), which USCIS approved on November 27, 2023. Filing 1 at 4 (¶¶ 13, 15). Eventually, the visa petition was sent to the United States Embassy in Amman, Jordan, for Fatima Omar Abusamri to appear for a consular interview. Filing 1 at 4 (¶ 16). Halhouli alleges,

> The State Department conducted Fatima Omar Abusamri's visa interview on or about April 21, 2024. After the interview, the consular office requested additional information, which was timely submitted by early May 2024. Since that time, the agency has refused to issue a final decision on this case.

Filing 1 at 4 (¶ 17).

On March 27, 2025, Halhouli filed his "Complaint in the Nature of Mandamus Arising from Defendants' Refusal to Adjudicate Plaintiff's Immigrant Visa Application." Filing 1 (reduced from all capitals). Halhouli named as Defendants the United States Department of State (DOS); the United States Embassy in Amman, Jordan; Marco Rubio, the United States Secretary of State, in his official capacity; and Rohit Nepal, the Chargé d'Affaires at the United States Embassy in Amman, Jordan, in his official capacity. Filing 1 at 2–3 (¶¶ 4–7).

Halhouli asserts two claims. First, he asserts a claim of "Agency Action Unlawfully Withheld and Unreasonably Delayed" pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 555(b). Filing 1 at 4. The gravamen of this claim is that "[t]he combined delay and failure to act on Fatima Omar Abusamri's immigrant visa application is attributable to the failure

of Defendants to adhere to their legal duty to avoid unreasonable delays under the INA and the applicable rules and regulations." Filing 1 at 5–6 (¶ 27). His second claim is for "Violation of Right to Due Process of Law." Filing 1 at 6. This claim alleges violation of "[t]he right to fundamental fairness in administrative adjudication . . . protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." Filing 1 at 6 (¶ 32). Like Halhouli's APA claim, this claim is based on "[t]he combined delay and failure to act by Defendants," this time alleging that the delay and failure to act have violated "the due process rights of Plaintiff." Filing 1 at 6 (¶ 33).

Halhouli seeks the following relief:

    1.    That this Honorable Court assume jurisdiction over this action;

    2.    That this Honorable Court issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days;

    3.    That this Honorable Court take jurisdiction of this matter and adjudicate Fatima Omar Abusamri's immigrant visa pursuant to this Court's declaratory judgment authority;

    4.    That this Honorable Court issue a writ of mandamus compelling Defendants to issue an immigrant visa to Fatima Omar Abusamri;

    5.    That this Honorable Court issue a writ of mandamus compelling Defendants to explain to Plaintiff the cause and nature of the delay and inform Plaintiff of any action that may be taken to accelerate processing of the visa application;

    6.    Attorney's fees, legal interests, and costs expended herein, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

    7.    Such other and further relief as this Honorable Court may deem just and proper.

Filing 1 at 7.

### B.  The Motion to Dismiss

Defendants filed the Motion to Dismiss now before the Court on June 16, 2025, seeking dismissal of Halhouli's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). Filing 10. In support of their Motion, they filed an Index of Evidentiary Material consisting of the Declaration of Samuel W. McDonald, a DOS attorney-adviser in the Office of Assistant Legal Adviser for Consular Affairs, concerning the results of his search of the electronic Consular Consolidated Database (CCD) of the DOS, Bureau of Consular Affairs. Filing 11-1. Defendants also filed a supporting brief. Filing 12. In response to Defendants' Motion, Halhouli filed an Opposition Brief, Filing 14, and an Index of Evidentiary Material consisting of Halhouli's Affidavit, Filing 15-1. Defendants then filed a Reply Brief on July 14, 2025. Filing 16. Defendants' Motion to Dismiss is now fully submitted.

## II. LEGAL ANALYSIS

### A. The Dispositive Issue

Defendants seek dismissal for both lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. If the Court does not have subject-matter jurisdiction over Halhouli's claims, then the Court need not determine whether Halhouli has failed to state a claim. *See Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002) ("Subject matter jurisdiction is a threshold matter that [courts] are obligated to address at the outset."); *see also Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) (explaining that a court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits"). Thus, the Court begins its legal analysis with a summary of Defendants' challenges to subject-matter jurisdiction to determine whether any such challenge is completely dispositive of Defendants' Motion and Halhouli's Complaint.

Defendants assert three challenges to subject-matter jurisdiction. Filing 12 at 2, 8. However, central to all three challenges is Defendants' fundamental contention that the consular officer refused Halhouli's spouse's visa petition after the consular interview. Filing 12 at 1. Defendants first contend that where Halhouli's spouse's visa petition has already been refused,

4

Halhouli cannot demonstrate that there is a mandatory, non-discretionary duty that Defendants failed to fulfill, so the Court lacks jurisdiction to order Defendants to take any action pursuant to the Administrative Procedure Act (APA) or a writ of mandamus. Filing 12 at 2. Second, Defendants argue that the doctrine of consular non-reviewability precludes the Court from reviewing the consular officer's decision to refuse a visa to Halhouli's spouse. Filing 12 at 2, 8. Third, Defendants argue that the consular officer's refusal of Halhouli's spouse's visa renders this lawsuit moot because the consular officer has already satisfied his duty to issue or refuse the visa. Filing 12 at 3, 8, 20. Defendants assert, "Plaintiff portrays the Complaint as one seeking to compel adjudication." Filing 12 at 21. However, because Defendants assert that adjudication has already occurred, Defendants argue that "[w]hat Plaintiff wants is this Court to compel expedited re-consideration of this application, which for reasons discussed throughout [Defendants' brief], is not allowed." Filing 12 at 21.

Defendants are correct that Halhouli portrays his Complaint as one seeking to compel adjudication of his spouse's visa application. Indeed, he characterizes his Complaint as "request[ing] that this Honorable Court issue a writ of mandamus compelling Defendants to adjudicate a long-delayed spouse visa application." Filing 1 at 2 (unnumbered first paragraph). More specifically, Halhouli's APA claim asserts that Defendants have unlawfully withheld and unreasonably delayed a final decision on his spouse's visa application and that the APA permits this Court to compel Defendants to make that final decision. See Filing 1 at 4–6 (¶¶ 19–30). Similarly, Halhouli's due process claim asserts that Defendants have unlawfully withheld and unreasonably delayed a final decision on his spouse's visa application in violation of a due process right to fundamental fairness in administrative adjudication. Filing 1 at 6–7 (¶¶ 31–34). However, contrary to Defendants' characterization, nothing in Halhouli's Complaint seeks to

compel "reconsideration" of the refusal of the visa application, where Halhouli's Complaint is premised on his assertion that there has been no refusal or other final decision on the visa application. The relief requested in the Complaint is focused on forcing completion of administrative processing, obtaining a final adjudication of the visa application, and obtaining issuance of the visa. Filing 1 at 7 (prayer, ¶¶ 2–4).

Furthermore, Halhouli's response to each of Defendants' challenges to subject-matter jurisdiction is that there has been no final decision on his spouse's visa petition and that this Court has jurisdiction to compel a final decision. Filing 14 at 1. Specifically, he responds to Defendants' first challenge to subject-matter jurisdiction by asserting that the consular officer's request for further information after his spouse's consular visa interview means that her application is "stuck" in "administrative processing" with no final decision. Filing 14 at 1–2. Halhouli argues that under these circumstances, the Court has jurisdiction to compel Defendants to fulfill their duty to adjudicate the visa application. Filing 14 at 3. Similarly, Halhouli contends that the doctrine of consular non-reviewability is inapplicable because Defendants have not rendered a final decision in this case. Filing 14 at 2. His response to Defendants' "mootness" argument is again that there has been no final decision that might moot his claims where the application is still undergoing administrative processing. Filing 14 at 13.

The Court concludes that only Defendants' "mootness" challenge to subject-matter jurisdiction squarely addresses Halhouli's claims as pleaded and the relief he seeks. If the DOS has already taken final action on Halhouli's spouse's visa application, Halhouli's claims based on delay of and failure to make a final decision—whether framed as APA claims or due process claims—are moot. *See Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 649–50 (8th Cir. 2025) (defining mootness as lack of a live controversy). In that situation, Halhouli would have already

obtained the relief he seeks—a final decision on his spouse's visa application—so Defendants would no longer be inflicting any injury that Halhouli claims, and the Court would lack subject-matter jurisdiction to proceed further. *See Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025) (explaining that a case is moot where a defendant "can no longer inflict the injury" that gives the plaintiff standing).

Consequently, the Court turns to a summary of the standards applicable to a challenge to subject-matter jurisdiction and the specific challenge in this case based on mootness.

### B.  Applicable Standards

*1.  Rule 12(b)(1) Challenges to Subject-Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The plaintiff bears the burden of establishing subject matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023) (citing *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)). "When considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." *Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)). "The method in which the district court resolves a Rule 12(b)(1) motion . . . obliges [the Circuit Court of Appeals] to follow the same approach." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Carlsen*, 833 F.3d at 908).

Here, Defendants state that they are mounting a "facial" attack on subject-matter jurisdiction. *See* Filing 12 at 7. In a "facial" attack, courts must look only at the pleadings and provide the same protections available under Federal Rule of Civil Procedure 12(b)(6). *See Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (stating standards for a "facial" challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1)); *Bauer v. AGA Serv. Co.*, 25

F.4th 587, 589 (8th Cir. 2022) (stating standards for failure to state a claim pursuant to Rule 12(b)(6)). When applying Rule 12(b)(6) safeguards, looking at the pleadings includes "consider[ing] documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). Rule 12(b)(6) standards also require among other things that the Court accept nonconclusory allegations as true. *See Bauer*, 25 F.4th at 589. However, the Court is not required to accept as true allegations in a complaint that are blatantly contradicted by documentary evidence properly considered on a motion to dismiss. See *Bayer US LLC v. AltEn, LLC*, No. 8:22CV82, 2023 WL 7130918, at *8 (D. Neb. Oct. 27, 2023) (citing *Meardon v. Register*, 994 F.3d 927, 935 (8th Cir. 2021); *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019); and *Zean*, 858 F.3d at 526). Similarly, the Court need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

2. *"Mootness" and Subject-Matter Jurisdiction*

The specific challenge to subject-matter jurisdiction in this case is "mootness." "Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III." *Humphrey v. Christopher*, No. 24-1854, 2025 WL 2112863, at *6 (8th Cir. July 29, 2025) (quoting *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021)). Thus,

> "[i]f the issues presented are no longer live or the parties lack a cognizable interest in the outcome, a case or controversy under Article III no longer exists because the litigation has become moot." *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025). A case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1362 (8th Cir. 2022).

8

*Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 649–50 (8th Cir. 2025). To put it another way, "a party loses a cognizable interest when changed circumstances already provide the requested relief and eliminate the need for court action." *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025) (quoting *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (internal quotation marks omitted)).

      For example, a case is moot where a defendant "can no longer inflict the injury" that gives the plaintiff standing. *See Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025). Thus, the Eighth Circuit held that a tribe's claim for declaratory and injunctive relief to remedy alleged interference with the tribe's inherent law enforcement authority was moot because "Defendants can no longer inflict the injury that gave the Band standing to bring this lawsuit" where an amendment to state law gave the tribe the law enforcement authority it sought. *Id.* Likewise, a plaintiff's central claims about pandemic-era policies were moot because those policies were no longer in effect. *Allan*, 127 F.4th at 721. Other Circuit Courts of Appeals have recognized that an agency decision on the merits of the issue presented as the basis for a lawsuit moots the lawsuit if it grants the relief sought in the lawsuit. *Saleh v. Garland*, No. 23-817, 2024 WL 1739090, at *1 (2d Cir. Apr. 23, 2024) (holding that the district court correctly dismissed as moot an immigrant's challenge to the denial of his application for naturalization where his application was granted, he took the oath of allegiance, and he became a citizen), *cert. denied*, 145 S. Ct. 558 (2024); *Sanitary Bd. of City of Charleston, W. Virginia v. Wheeler*, 918 F.3d 324, 330 (4th Cir. 2019) (the EPA's decision to disapprove state standards mooted a claim that the EPA was required to disapprove the state standards because they violated the Clean Water Act); *Velasquez v. Nielsen*, 754 F. App'x 256, 262 (5th Cir. 2018) (the DHS's belated response to a Freedom of Information Act (FOIA) request mooted a party's claim based on untimely response

to that FOIA request); *Vukov v. U.S. Dep't of Homeland Sec.*, 561 F. App'x 648 (9th Cir. 2014) ("USCIS's denial of Vukov's petition mooted his failure to adjudicate claims.").

### C. Halhouli's Claims for a Final Decision Are Moot

The Court turns to application of the standards above to Defendants' "mootness" challenge to subject-matter jurisdiction. However, the Court will first summarize the parties' arguments.

#### 1. The Parties' Arguments

The theme throughout Defendants' brief is that the consular officer has already made a "final" determination by refusing Halhouli's spouse's visa application after the consular interview, thus satisfying the obligation to adjudicate the application. *See, e.g.*, Filing 12 at 1–3. Defendants argue that the District of Columbia Circuit Court of Appeals rejected the notion that refusal under INA § 221(g), 8 U.S.C. § 1201(g), is not "final" and found that the DOS has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under that statute. Filing 12 at 11, 13–15 (citing *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (unpublished)). Defendants argue that where the matters raised in this action have already been decided, the action is not an active case or controversy and is instead moot. Filing 12 at 20. Defendants argue that Halhouli portrays this case as seeking to compel adjudication of the visa application, but the visa application has already been adjudicated and refused. Filing 12 at 21. Defendants contend that the possibility that a consular officer could reopen and reconsider Halhouli's spouse's application is of no import because any such action would involve discretionary reconsideration of a decision that is final under the applicable statute. Filing 12 at 22.

Halhouli argues that Defendants' reliance on *Karimova* for the proposition that there has been a final adjudication of his spouse's visa application is unavailing because the District of

Columbia Circuit Court of Appeals recognizes that unpublished decisions have only persuasive authority. Filing 14 at 8. He contends that both the DOS Foreign Affairs Manual, 9 FAM306.2-2(A) (2024), and 22 C.F.R. § 42.81(b) provide that a "refusal" may be overcome by additional evidence in administrative processing. Filing 14 at 9. Halhouli contends further that other courts have recognized that if an application is still undergoing "administrative processing," the decision is not final, even if a "refusal" has been relayed to the applicant. Filing 14 at 13. Thus, Halhouli argues that any labeling of the application as "refused" was "temporary," and the Court should consider what is actually happening to decide if the agency has discharged its duty to adjudicate the application. Filing 14 at 13. He argues that the consular officer's request for additional information suggests that the officer did not make a final decision and is instead keeping the matter under consideration pending additional information. Filing 14 at 14. Halhouli then argues that he "is not asking the Court to order the Defendants to *approve* his wife's visa case, but the law does provide that he is entitled to a final decision." Filing 14 at 14 (emphasis in the original).[1] Halhouli contends that the consular officer has not yet fulfilled his duty by reviewing the additional information Halhouli's spouse provided in response to the consular officer's request. Filing 14 at 14.

> 2. *The Consular Officer Made a Final Decision to Refuse the Visa Application Mooting Any Claim for a Final Decision*

As the basis for his claim, Halhouli alleges,

> The State Department conducted Fatima Omar Abusamri's visa interview on or about April 21, 2024. After the interview, the consular office requested additional information, which was timely submitted by early May 2024. Since that time, the agency has refused to issue a final decision on this case.

---

[1] This argument contradicts Halhouli's own Complaint, in which he expressly seeks among other relief "[t]hat this Honorable Court issue a writ of mandamus compelling Defendants to issue an immigrant visa to Fatima Omar Abusamri." Filing 1 at 7 (prayer, ¶ 4). The Court believes that Halhouli has waived a claim for such relief by eschewing it in his brief. However, other issues are dispositive.

Filing 1 at 4 (¶ 17). This allegation suggests that the consular officer only requested additional information and did not make a final determination on Halhouli's spouse's visa application after the consular interview. Halhouli urges the Court to accept this allegation as true and not to consider any other information at this juncture. Filing 14 at 1–2 (citing *Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 27 (D.N.H. 2023)).

>In *Raouf*, on which Halhouli relies, the district court explained,
>
>>Here, defendants attach a declaration prepared by an employee with the Office of the Assistant Legal Adviser for Consular Affairs to their motion to dismiss. See doc. no. 10-2. Defendants' arguments for dismissal rely in part on factual information contained in this declaration. However, defendants have not established that consideration of this declaration is appropriate at this juncture. The declaration is not a public record; it is not central to Raouf's claim; it is nowhere referred to in Raouf's complaint; and Raouf does not concede the declaration's authenticity. Therefore, the court will limit its analysis to the well-pleaded allegations in Raouf's complaint.

*Raouf*, 702 F. Supp. 3d at 27. This Court is also presented with a Declaration of a DOS attorney-adviser in the Office of Assistant Legal Adviser for Consular Affairs, concerning the status of Halhouli's spouse's consular interview. Filing 11-1. However, unlike the district court in *Raouf*, this Court concludes that the Declaration can be properly considered. *Contra Raouf*, 702 F. Supp. 3d at 27. The allegation in Halhouli's Complaint about the results of the consular interview are contradicted not just by documentary evidence submitted by Defendants—and embraced by Halhouli's allegations—but by applicable statutes and regulations. *See Bayer US LLC*, 2023 WL 7130918, at *8 (explaining that the Court is not required to accept as true allegations in a complaint that are blatantly contradicted by documentary evidence properly considered on a motion to dismiss).

First, Halhouli's Complaint acknowledges that the consular interview occurred, but it alleges only part of the result of that interview. By doing so, the Complaint embraces the interview and its outcome, even if Halhouli's allegations about the results of the consular

12

interview are incomplete. *Rossi*, 60 F.4th at 1193 (applying Rule 12(b)(6) standards, looking at the pleadings includes "consider[ing] documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" (quoting *Zean*, 858 F.3d at 526)). Halhouli has partially alleged the results of the interview in his Complaint and in response to Defendants' Motion he has not disputed the authenticity or correctness of the Declaration about the records of his spouse's consular interview kept by the DOS. *Id.*[2]

Documents in the Consular Consolidated Database (CCD) of the U.S. Department of State, Bureau of Consular Affairs, reflect more fully than Halhouli's allegations the outcome of the consular interview, as follows:

> Ms. ABUSAMRI appeared for her consular interview at the U.S. Embassy in Amman and applied for an IR1 immigrant visa on April 21, 2024. On the same date, the consular officer refused Ms. ABUSAMRI visa application under INA § 221(g), 8 U.S.C. § 1201(g). The consular officer determined Ms. ABUSAMRI failed to demonstrate her eligibility for the visa sought and that additional security screening was required.

Filing 11-1 at 2 (¶ 8) (McDonald Dec.). Documentary evidence thus embraced by the Complaint demonstrates the incompleteness—and the blatant incorrectness—of Halhouli's allegations by demonstrating that the visa application was refused.

Furthermore, under applicable statutes and regulations, upon an applicant's execution of a visa application, the consular officer must issue the visa or refuse the visa application under INA 212(a), 8 U.S.C. § 1182(a), or 221(g), 8 U.S.C. § 1201(g), or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa. *See* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a). Section 1201(g) provides, with exceptions not relevant here,

---

[2] Halhouli also made no attempt to challenge the admissibility of evidence of the DOS records as business records under Federal Rule of Evidence 803(6) or as public records under Federal Rule of Evidence 803(8)(A)(iii). *See United States v. Lundstrom*, 880 F.3d 423, 441–42 (8th Cir. 2018).

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law. . . .

8 U.S.C.A. § 1201(g). The pertinent regulation states,

> Grounds for refusal. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a). Halhouli has not cited—and the Court has not found—any statute or regulation that permits a disposition after the consular interview such as "temporary refusal" or "interim refusal"; the only permissible outcomes are issuance or refusal of the visa.

Thus, the allegation that the consular officer only "requested additional information" after Fatima Omar Abusamri's consular interview and "[s]ince that time, the agency has refused to issue a final decision on this case" is blatantly contradicted by documentary evidence embraced by the Complaint and by applicable statutes and regulations. *See Bayer US LLC*, 2023 WL 7130918, at *8. Consular officers may in their discretion afford noncitizens who have been refused a visa under 8 U.S.C. § 1201(g) additional administrative processes to attempt to demonstrate admissibility. *See* U.S. Dep't of State, Administrative Processing Information, available at: https://usaodc.click/AdminProcessInfo.[3] However, that does not change a refusal of

---

[3] The website states in pertinent part,

> There are only two possible outcomes for complete and executed U.S. visa applications (absent a visa sanction against a country under Section 243(d) of the Immigration and Nationality Act). The consular officer will either issue or refuse the visa. If a visa applicant has not established that he or she is eligible for a visa, the consular officer must refuse that application. However, in accordance with Department procedures, a consular officer may determine that additional information from

a visa after a consular interview into some non-final determination. Indeed, as the website states, additional discretionary administrative processing is contingent on the consular officer's refusal of the application. *Id.*

Finally, even applying Rule 12(b)(6) safeguards, the Court is not required to accept as true Halhouli's allegation that since his spouse's consular interview, "the agency has refused to issue a final decision on this case." Filing 1 at 4 (¶ 17). That is a legal conclusion that Halhouli asks the Court to draw from the facts, but the Court need not accept a pleader's "legal conclusions drawn from the facts." *Knowles*, 2 F.4th at 755. Rejection of Halhouli's legal conclusion is particularly appropriate when it is contrary to documentary evidence embraced by the Complaint and contrary to applicable statutes and regulations.

> 3. *The Consular Officer's Refusal of the Visa Application Moots Halhouli's Claims*

The consular officer's refusal of Halhouli's spouse's application after the consular interview moots Halhouli's claims because the agency has already provided the final determination Halhouli seeks. *Allan*, 127 F.4th at 720 (explaining that a case is moot when circumstances have already provided the requested relief and eliminated the need for court action); *Saleh*, 2024 WL 1739090, at *1 (claim based on denial of application for naturalization was mooted when the application was accepted); *Vukov*, 561 F. App'x 648 ("USCIS's denial of Vukov's petition mooted his failure to adjudicate claims."). To put it another way, the DOS can

---

sources other than the applicant may help establish an applicant's eligibility for a visa. In such cases, refused visa applications warrant further administrative processing. Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied. Alternatively, the officer may conclude that the applicant remains ineligible for a visa. When administrative processing is required, the consular officer will inform the applicant at the end of the interview. The duration of the administrative processing will vary based on the individual circumstances of each case. Visa applicants are reminded to apply early for their visas, well in advance of the anticipated travel date.

no longer inflict the injury that Halhouli alleges gives him standing—undue delay in determining whether to issue or refuse his spouse's visa petition—because the DOS has denied the visa petition. *Mille Lacs Band of Ojibwe*, 128 F.4th at 941.

In short, the DOS has already made the "final decision" that Halhouli seeks, thus eliminating any need for the Court to "issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days," "to take jurisdiction of this matter and adjudicate Fatima Omar Abusamri's immigrant visa pursuant to this Court's declaratory judgment authority," or to "issue a writ of mandamus compelling Defendants to issue an immigrant visa to Fatima Omar Abusamri." Filing 1 at 7 (prayer, ¶¶ 2–4).

Defendants are entitled to dismissal for lack of subject-matter jurisdiction of Halhouli's claims seeking to compel the DOS to make a final determination of his spouse's visa application. Such claims are moot where the consular officer already refused the visa application.

### D. Defendants' Other Challenges to Halhouli's Complaint

The Court's determination that it lacks subject-matter jurisdiction because Halhouli's claims are moot makes it unnecessary for the Court to consider Defendants' other two challenges to subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Furthermore, the Court's determination that it lacks subject-matter jurisdiction over Halhouli's claims makes it inappropriate for the Court to consider whether those claims fail to state claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Sianis*, 294 F.3d at 997 ("Subject matter jurisdiction is a threshold matter that [courts] are obligated to address at the outset."); *see also Oglala Sioux Tribe*, 904 F.3d at 609 (explaining that a court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits"). The parts of Defendants' Motion to Dismiss asserting these additional grounds for dismissal are denied as moot.

16

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion to Dismiss, Filing 10, is granted for lack of subject-matter jurisdiction because Plaintiff's claims are moot, but the Motion is otherwise denied as moot.

IT IS FURTHER ORDERED that this case is dismissed in its entirety.

Dated this 12th day of August, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge